No. 13164

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

GEORGE R. NEVIN et al.,

Plaintiffs and Respondents,

-vs-

THE COUNTY OF SILVER BOW et al.,

Defendants and Appellants.

---

Appeal from: District Court of the Second Judicial District,
Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Appellants:

Stimatz and Engel, Butte, Montana
Lawrence G. Stimatz argued, Butte, Montana

For Respondents:

McCaffery and Peterson, Butte, Montana
John L. Peterson argued, Butte, Montana

---

Submitted: March 16, 1977

Decided: JUN - 1977

Filed: JUN - 1977

*Thomas J. Kearney* Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal by Silver Bow County from an adverse judgment in a breach of contract case involving the lease of the restaurant and lounge facility at the county airport. The cause was tried before Hon. Jack D. Shanstrom, sitting without a jury, in the district court, Silver Bow County, on January 27, 1975. Judgment was entered April 23, 1975. From this judgment in favor of plaintiffs, defendant county appeals.

In 1968, the commissioners of Silver Bow County established by resolution an airport commission to act as an advisory commission to the Board of County Commissioners and charged it with the duty of an overall program of development and control of the airport. Day to day control for the airport operation was vested in the airport manager and engineer.

In 1968, Wm. J. Violet leased the premises set aside for a lounge and restaurant consisting of approximately 4,100 square feet. At this time the lounge and restaurant were not completed. Later Violet abandoned the lease and the premises were idle for approximately 8 months. The county (lessor) then executed a lease agreement with plaintiffs George R. Nevin and Geraldine Nevin, (lessees). Paragraph 2 of the lease recognized some deficiencies in the premises and agreed to install a dumb waiter, carpet on the second floor, and further railing on the balcony. Paragraph 3 of the lease breaks the rental of $300 per month into $175 rent, and $125 as lessees' share of water and electricity until the improvements were completed; then the basic rent would be $375, plus $125 for lessees' share of water and electricity, or a total rental of $500 per month.

The lease became effective November 30, 1968 and lessees paid the first month's rental required under the lease in December 1968. Paragraph/of the lease agreement provides:

> "For the consideration aforesaid, lessor hereby gives and grants unto lessee, his successors and assigns, the right, privilege and option of renewing this Lease, at the expiration of the aforementioned term, <u>for an additional term of five (5) years, upon the same conditions, covenants and agreements herein set forth and at a rental to be negotiated by the parties, by giving to the lessor at least ninety days' written notice prior to the expiration of such term</u> of lessee's desire to exercise said option and renew this Lease for such additional term; <u>provided, however, that the rental for the additional term shall not be increased or decreased beyond a reasonable sum, taking into consideration conditions existing at the time of renewal and capital improvements, if any, on the premises during the term</u>." (Emphasis supplied.)

On August 28, 1973, lessees mailed the required notice to exercise their option provided in paragraph 5 of the lease to extend the term of the lease for an additional five years. On August 31, 1973, lessor responded that the notice was not timely, based on its <u>copy</u> of the lease which indicated an effective date of November 1, 1968, inked in, rather than November 30, 1968, as shown on lessees' copy. There was considerable argument back and forth between the parties from August 1973 until October 30, 1973, concerning the renewal. On October 30, 1973, lessor proposed a <u>new lease</u> for a term of 3 years with a rental of $1,500 per month and/or the premises vacated as of October 31, 1973, the date the lessor alleged the old lease expired. As a result of this communication an agreement was then made to continue operation of the airport facility on a reservation of rights for both parties. On November 15, 1973, lessor agreed the termination date of the lease was not until November 30, 1973 and notice of renewal was received on time.

Lessees offered a 20% increase in rent or $600. November 20, 1973, lessor responded with a rental of $1,200 per month and in addition requested certain changes in the provisions of the "old" lease. On November 30, the lease terminated.

Lessees finally vacated the premises, after filing an action to determine the rights of the parties on January 3, 1974 and amended the action on January 25, 1974 to breach of contract. Lessor on February 24, 1974 filed an answer generally denying all allegations, admitted the lease but denied the effective date of November 30, 1968 and alleged it to be November 1, 1968. Based on this date, the lessor then by affirmative defense, plead estoppel because the lease terminated before notice was received and further alleged the lessees knew the date to be wrong.

After trial, the court made findings of fact and conclusions of law stating in essence:

"1. That Plaintiffs entered into a lease agreement with the County of Silver Bow, a body politic and political subdivision of the State of Montana, and the Airport Commission of Silver Bow County, Montana, as lessors, on October 31, 1968, for the lease of certain premises in the Silver Bow County Airport Terminal Building, beginning the 30th day of November, 1968, and ending on the same date five years hence in the year 1973. * * * That at the time of execution of the lease agreement, the premises were not ready for occupancy and were not made ready for occupancy by lessors until November 30, 1968. That as a part of the lease arrangement the Plaintiffs received transfer of Retail Beer and Liquor License No. 7847 on December 5, 1968, * * * and paid the first month rent in advance on December 5, 1968.* * * That it was the intention of all of the parties that the Plaintiffs were to have a full five year term of actual occupancy in the leasing of the premises.

"2. * * * and as late as November 15, 1973, the Airport Board conceded the fact that the lease would not terminate until November 30, 1973, and therefore waived any right to contend the lease terminated November 1, 1973."

Finding of fact No. 3, stated plaintiffs had the right to renew under paragraph 5 of the lease for 5 years and on August 28, 1973 and at least 90 days before expiration, advised defendant of their intent to renew for 5 years.

Finding of fact No. 4, states that on August 31, 1973, defendant acknowledged plaintiffs' letter to renew but advised plaintiffs the notice was too late and defendant, without waiving

any of its rights because of failure to notify in time, advised that it would in essence negotiate a "new" lease. The next contact by defendant with plaintiffs was by letter dated October 30, 1973 advising the lease expired October 31, 1973 and contemporaneous therewith presented a new lease with other terms changed, in addition to the rent increase to $1,500 per month. On November 1, 1973 defendant requested possession by midnight November 1, 1973, at a penalty of $50 per day for holding over, and then offered a 30-day tenancy to plaintiffs to run to November 30, 1973. The court further said:

"* * * That the actions by the Defendants breached the terms and conditions of the lease agreement * * * by reason of its failure to negotiate a reasonable increase or decrease in rental prior to expiration of the term of the lease on November 30, 1973. That the offer of the Defendants by letter of November 20, 1973, in offering a rental change by increase of rent to $1200.00 per month and provided other provisions of the lease agreement were changed * * * was an unreasonable demand for rent increase in violation of Paragraph 5 of the lease agreement, and also violated Paragraph 5 of said lease by demanding that various other provisions of the lease agreement be changed, even though the parties had agreed in the option to renew that the lease would be renewed for an additional five years 'upon the same conditions, covenants and agreements set forth', except for rental.

"5. That the offer of the Defendants on November 20, 1973, was an unreasonable reply to Plaintiffs' offer of November 15, 1973, to increase the rent to %600.00 per month, * * * which the court finds was a reasonable amount for rental under the circumstances existing at the time and in view of the moderate amount of capital expenditure made during the term of Plaintiffs' lease."

Finding of fact No. 6, states the actions of the parties in an attempt to negotiate a "new" lease after November 30, 1973 were efforts in compromise of a disputed claim and not material to complying with paragraph 5 of the lease. Even if material, this increase to $875 is specifically found to be unreasonable in view of conditions existing at the time and capital improvements made.

"7. That Paragraph 5 of the lease agreement cited above is a valid, binding and enforceable provision of the lease agreement given for the benefit of the lessees and relied upon by them as an inducement to enter into the lease agreement in October of 1968. That in light of said provision, the Court finds that it could have fixed and determined a fair and reasonable increase in rental in the absence of agreement by the parties, and in the further event the Plaintiffs sought to elect to enforce such remedy. That Plaintiffs, however, are entitled to select any remedy available to them, including this action for breach of contract. That the parties themselves recognized that such clause was valid and enforceable by attempting to negotiate a reasonable rental."

Finding of fact No. 8, stated that had defendant adequately investigated the facts it could have found in August that the lease terminated November 30, 1973. Upon admission by November 15, 1973 of the true facts, defendant was under a firm duty to negotiate and fix a reasonable increase or decrease in rent with lessees before November 30, 1973. This duty was breached.

"9. That upon execution of the lease agreement and beginning November 30, 1968, Plaintiffs went into possession of the leased premises and for a period of five years conducted a restaurant and cocktail lounge business continually during that period of time, and had as of the termination of the lease on November 30, 1973, an established business in Silver Bow County, with a good business reputation for good food and service and from which the court does conclude that such business would have enjoyed profitable success in the next five years of operation.

"10. That the business records of the Plaintiffs establish by a preponderance of the evidence that by reason of Defendants' breach of the lease agreement Plaintiffs would have earned a net profit in the business of a period of five years from November 30, 1973, the sum of Twelve Thousand Dollars ($12,000.00) each year, which is determined after deducting from the expected gross revenue all business expenses, including taxes, wages, depreciation and a reasonable value of Plaintiffs' services.

"11. That by reason of the conduct of business over a term of five years the Plaintiffs earned a good business reputation and established good will with the community, from which Plaintiffs could reasonably have enjoyed continued profitable operation by reason of its business location, reputation for good food and service, general atmosphere and repeated return of their customers. That by reason of the breach of the lease agreement by the Defendants, the Plaintiffs suffered damages by loss of good will in

the reasonable sum of Five Thousand Dollars ($5,000.00).

"12. That by reason of the breach of the lease agreement by Defendants, the Plaintiffs were forced to sell their business, equipment and inventory in piecemeal lots. That had Plaintiffs been able to sell such equipment as a going concern, the reasonable value of such equipment was the approximate sum of Twenty Five Thousand Dollars ($25,000.00) That by reason of the premature and forced sale of such equipment, Plaintiffs received the sum of Nine Thousand Seven Hundred Eighteen and 60/100ths Dollars ($9,718.60). That by reason thereof the Plaintiffs suffered damages in the sale of said equipment in the sum of Fifteen Thousand Dollars ($15,000.00).

"CONCLUSIONS OF LAW

"I. That Plaintiffs have established by a preponderance of the evidence that the Defendants breached the lease agreement existing between the parties, and particularly Paragraph 5 thereof.

"II. That by reason of the breach of such agreement, the Plaintiffs have established by a preponderance of the evidence that they suffered damages as follows:

"A. Loss of Profits --------------------$25,000.00

"B. Loss of Goodwill---------------------$5,000.00

"C. Loss of value on Equipment ----------$15,000.00

"for total damages in the sum of Forty Five Thousand Dollars ($45,000.00)."

Defendant appeals and presents three issues for review:

1. The court erred in overruling defendant's offer of proof to show the bids and the amount of rent for which the leased premises were let to plaintiffs' successor as tenant as being indicative of the reasonableness of the defendant's offer of a monthly rent of $865.00 to plaintiffs.

2. The court erred in that its findings and judgment of breach of lease agreement and of refusal to negotiate a reasonable increase in rent by defendant are not supported by substantial, credible evidence.

3. The court erred in that the damages awarded plaintiffs are excessive, improper and contrary to the evidence and the law.

Lessor generally argues the matter of the correct termination date did not arise during the term of the lease and there was no "awareness" of this until August 31, 1973. That all matters until the defendant agreed to a November 30, 1973 termination date as correct on November 15, 1973, should be deemed acts in good faith. Lessor then simply says all negotiations after November 15, 1973, were good faith and reasonable attempts to set a new rental figure and discuss "(other * * * housekeeping details in removing obsolete provisions from the lease)".

This logic simply ignores the facts in this case. The whole tenor of this situation as far as defendant was concerned after November 15, was merely that the notice was filed on time, so let us go forward as is and negotiate a new contract. Examples: (1) Plaintiffs' Exhibit No. 14, a letter from defendant to plaintiffs dated November 20, 1973, which states in essence---we recognize your November 30 date but we want $1,200 based in part on offers from others and in addition to rent there must be other changes in the lease. (2) Exhibit A of defendant, a letter from defendant to plaintiffs dated December 11, 1973 in response to a request of plaintiffs for justification of the $1,200 rent figure:

> "The Board and the Commission are in agreement that no good purpose would be served by providing a detailed set of figures in support of this $1,200 monthly rental proposal. If necessary the Board and Commission will supply such figures and justification of the $1,2000 price in court". (Emphasis added.)

This communication was signed by the three members of the board of county commissioners. On December 28, after numerous exchanges defendant reminded plaintiffs to be gone by the end of January, if no settlement was reached, and so on and on.

These few examples demonstrate the problem, but the review of the entire record amply supports the trial court with credible and substantial evidence.

Damages have been attacked by defendant as self-imposed, beyond the contemplation of the parties when they entered into the lease in 1968, etc. However, the only proof of damages has been produced by the plaintiffs. Plaintiffs produced evidence of loss of profit for 5 years, loss of good will, and loss of market value of equipment at forced sale.

In Laas v. Montana Highway Commission, 157 Mont. 121, 132, 483 P.2d 699, this Court specifically held that under section 17-301, R.C.M. 1947, which provides that the measure of damages in a breach of contract action is the amount that will compensate the party aggrieved for all the detriment proximately caused thereby or which in the ordinary cause of things would be likely to result therefrom, damages are recoverable for loss of profits:

> "'* * * the rule is that a person may recover for loss of profits where it is shown that such loss is the natural and direct result of the act of the defendant complained of and that such amount is certain and not speculative. * * * "Profits which are a mere matter of speculation cannot be the basis of recovery in suits for breach of contract, while profits which are reasonably certain may be."'" 157 Mont. 132.

From plaintiffs' testimony and plaintiffs' Exhibits 6 and 17, the court found plaintiffs' could reasonably in the next 5 years expect a yearly profit of $12,000 per year (court's finding No. 10) yet the court awarded $5,000 per year which is well within the evidence. The same holds true for good will and the equipment. The equipment Exhibit was introduced without objection and demonstrates the trial court's award.

In regard to the offer of proof as to justification of a higher rental, the foundation was absent to make the proposed evidence material or relevant to the considerations allowable under the contract which governs the method of arriving at a

new rent figure and was therefore properly denied by the trial court.

Finding no error and there is substantial credible evidence to support the judgment of the trial court, that judgment is affirmed.

_____
Justice.

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 10 -